UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                            :

UNITED STATES OF AMERICA,          :

                      - against -                      :

                                                       :                  17-CR-707 (VSB)

MERLIN DILONE,                               :                  **OPINION & ORDER**

                                      Defendant.    :

-----------------------------------------------------------X

VERNON S. BRODERICK, United States District Judge:

       Before me is the motion of Merlin Dilone ("Defendant" or "Dilone") for a reduction in sentence from 156 months to 101 months pursuant to 18 U.S.C. § 3582(c)(1)(A). Because Defendant has failed to demonstrate extraordinary and compelling circumstances that would warrant the reduction of his sentence, Dilone's motion is DENIED.

       Defendant also moves for a sentence reduction based upon the retroactive application of Amendment 821 to the United States Sentencing Guidelines ("USSG" or the "Guidelines"). Because Defendant is not eligible for either the "Status Points" reduction or the "Zero-Point Offender" reduction under Amendment 821, his Amendment 821 motion is DENIED.

       **I.**        **Background and Procedural History**[1]

       Starting in at least 2002, Dilone became associated with a street gang known as "075." (Doc. 36 ("PSR") ¶ 81; *see also id.* (in 2002, "Dilone got a large tattoo on his right forearm bearing the numbers '075,' along with an image of a box cutter blade.").) Since at least 2010, certain members of 075 were involved in a conspiracy that included gang-related drug

---

[1] The facts contained in this section are taken from Defendant's Presentence Investigation Report ("PSR"), (Doc. 36), as well as other materials identified herein.

distribution and violence in the vicinity of Weeks Avenue and East 175th Street in the Bronx. (*Id.* ¶¶ 7–8.) Dilone assisted 075 in packing, delivering, and selling various drugs, including cocaine, crack, and heroin, and generally supporting 075's drug supply chain. (*Id.* ¶¶ 82–83.) Dilone was responsible for distributing eight kilograms of cocaine base, nine kilograms of cocaine, and one kilogram of heroin. (*Id.* ¶ 85.)

Although Dilone was not involved in day-to-day street violence, such as shootings over drug dealing territory, Dilone fatally stabbed Eddy Guzman in the heart during a dispute outside a nightclub on March 9, 2016. (*Id.* ¶¶ 83, 86–90.) Guzman was a member of a rival gang known as the "Chupis." (*Id*. ¶ 86.) In the early morning hours of March 9, 2016, Dilone and Guzman were each visiting the Opus Lounge in Inwood (the "Club") with members of their respective gangs. (*Id*.) As the Chupis exited the Lounge, a member of 075 ("Cuello") confronted one of the Chupis ("Vargas") for purportedly cooperating with law enforcement. (*Id*. ¶¶ 86–87.) Cuello and Vargas had a brief physical struggle. (*Id*.) Vargas tried to escape, but Cuello restrained him by grabbing his gold chain. (*Id*.) Dilone then approached the struggle from behind Cuello, brandishing a bladed weapon and apparently having the intent to stab Vargas. (*Id*.) Club security restrained Dilone before he could use his blade. (*Id*.) Moments later, Vargas's chain broke in Cuello's hand, and Vargas was able to flee. (*Id*.)

Guzman then confronted Cuello about taking Vargas's chain. (*Id.* ¶ 88.) Club security broke up the altercation, and the 075 members headed to the back of a parking lot next to the club to wait for the Chupis. (*Id.*) After Guzman entered the parking lot, Cuello approached him, and the two squared up to fight. (*Id.* ¶ 89.) Neither Guzman nor Cuello had a weapon. (*Id.*) Seconds after Cuello approached Guzman, and before either was within striking distance of each other, Dilone approached Guzman from the side and stabbed him in the left side of his chest,

2

causing fatal injuries to Guzman's left lung and heart. (*Id*.) Guzman—who did not immediately collapse and apparently did not yet understanding what had happened—tried to punch Cuello, but missed him. (*Id*. ¶ 90.) Guzman then grabbed his chest, lifted his shirt, saw his wound, and pointed at Dilone, who pointed back at him. (*Id*.) Guzman then left out of the back of the parking lot. Guzman's body was found by police and paramedics after he collapsed on a parked car nearby. (*Id*.) Later that night, Dilone told other people he had stabbed Guzman at least twice. (*Id*.)

After the stabbing, Dilone fled New York for Mexico, and after several months went to Hazelton, Pennsylvania. (*Id*. ¶ 91.) Dilone distributed drugs in Hazelton until United States Marshals arrested him and one of his co-conspirators in March of 2018. (*Id*.)

Pursuant to a plea agreement, Dilone pled guilty on November 1, 2018 to one count of conspiring to conduct and participate in a racketeering enterprise along with other members of 075. (*Id*. ¶¶ 2–4.) Dilone admitted to committing voluntary manslaughter in his plea agreement. (*Id*. ¶ 5.) Manslaughter is not "racketeering activity" within the meaning of applicable law, *see* 18 U.S.C. § 1961(1); USSG § 2E1.1, so that conduct did not factor into Dilone's base offense level, (PSR ¶ 5(a)). However, Dilone's possession of a dangerous weapon and his use of violence during the offense, *see* USSG § 2D1.1(b)(1)–(2), each resulted in a two-level increase to his total offense level, (PSR ¶ 5(d)–(e)). Dilone and the Government agreed to an offense level of 31 and a guidelines range of 108 to 135 months' imprisonment. (*Id*. ¶ 5.)

On October 25, 2019, Dilone appeared before me for sentencing. (Doc. 62.) I heard impact statements from four members of Guzman's family, including Guzman's brother, who said, among other things,

> Words cannot describe how much pain I have, how much pain this death has caused my family and I. My brother, Eddy, was an amazing person with great energy. He

3

was the one person who kept the family together because he was the glue to the family. . . . At the tender age of 38, his life was cut short by a cowardly act. This pitiful individual before you [*i.e.*, the defendant] took a piece of my life and my family's life. . . . Judge, this loss has affected every single person in my family. My father's health has declined significantly due to the level of stress by the act of this coward sitting before the Court. My family is not complete and will never be complete due to the defendant's reckless act. Let's not forget it's because of his action my family is suffering. My son won't be able to meet his uncle. My mother won't be able to walk her son down the aisle on his wedding day. Nor my father enjoying watching a baseball game with my brother—it's heart-wrenching. It's not enough time, Judge, that can be given to satisfy us, because my brother is gone. Today I went and visited him in the grave. I spoke to him and that's all I could do. His [the defendant's] family has the privilege of still speaking him. His family still has the privilege of saying "God bless you." We don't.

(Sent'g Tr. 22:22–25:20.)[2]

During sentencing, I remarked to Dilone that he "stabbed . . . Guzman" and "made various conscious choices" that led to Guzman's death, such as "bring[ing] a blade" to the Club and "decid[ing] to use that weapon, even though Mr. Guzman[] had not directly confronted you and was not an immediate threat to you." (*Id.* at 45:13–46:6.)

After reviewing various personal characteristics and sentencing guidelines factors, I sentenced Dilone to "a period of 156 months" to be followed by "supervised release of three years." (*Id.* at 47:17–49:12.)

On November 19, 2019, Dilone filed a direct appeal, but he ultimately stipulated to dismissal of the appeal with prejudice. *See United States v. Dilone*, 19-3900 (2d Cir.).

On November 18, 2021, Dilone submitted a request for compassionate release or reduction of sentence to the warden of the prison where he was housed. (Gov't Mem. Ex. C.)[3] The warden denied Dilone's request.

---

[2] "Sent'g Tr." refers to the transcript of the hearing held on October 25, 2019 at which I sentenced Dilone.

[3] "Gov't Mem." refers to the letter-brief filed by the Government in opposition to Dilone's motion for reduction of sentence and the exhibits attached thereto. (Doc. 67.)

On April 18, 2022, Dilone filed the instant motion for a reduction of sentence. (Doc. 65 ("Def. Mem.").) On April 26, 2022, I entered an order directing the government to respond by May 11, 2022, if it intended to oppose Dilone's motion. (Doc. 66.) The Government filed its opposition on May 10, 2022, (Gov't Mem.), and it filed a supplemental letter on May 11, 2022, to which it attached an email from Guzman's brother voicing objection to reducing Dilone's sentence, (Doc. 68). On May 12, 2022, I entered an order directing Dilone to file a reply memorandum no later than May 27, 2022, if he wished to file one. (Doc. 69.) On May 31, 2022, Dilone's reply memorandum was filed on the docket, though it contains a stamp indicating it was received by the Court's Pro Se Office on May 21, 2022. (Doc. 70.) On June 2, 2022, the Government sought permission to file a sur-reply. (Doc. 71.) I granted the request that same day, (Doc. 72), and the Government filed a sur-reply also on that day, (Doc. 73).

## II. Compassionate Release Motion

### A. *Legal Standards*

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020). Section 3582(c)(1)(A)(i) of title 18 of the United States Code, the compassionate release statute, provides one such exception. The compassionate release statute permits a court to "reduce" a term of imprisonment "if it finds that (1) the defendant's circumstances present extraordinary and compelling reasons to warrant a reduction, (2) the factors proscribed in 18 U.S.C. § 3553(a) do not outweigh such extraordinary and compelling reasons, and (3) a reduction would be consistent with the relevant policy statements of the Sentencing Commission, *i.e.*, the policy statement in [USSG] § 1B1.13." *United States v. Van Putten*, 726 F. Supp. 3d 245, 251 (S.D.N.Y. 2024)

(citing 18 U.S.C. § 3582(c)(1)(A)).[4]

"[USSG] § 1B1.13(b) enumerates six circumstances that, when considered either individually or in combination, a court may find amount to extraordinary and compelling reasons." *United States v. Garcia*, --- F. Supp. 3d. ---, No. 09-CR-330, 2024 WL 4966103, at *2 (E.D.N.Y. Dec. 4, 2024). Specifically, the policy statement provides that any of the following may be relevant to a finding of extraordinary and compelling circumstances: (1) the "medical circumstances of the defendant"; (2) the defendant is "at least 65 years old," is "deteriorat[ing]" with age, and has served the lesser of 10 years or 75% of his sentence; (3) the "family circumstances of the defendant"; (4) whether the defendant was physically or sexually abused while in custody; (5) whether "any other circumstance or combination of circumstances" exist that "are similar in gravity" to the preceding four circumstances; and/or (6) the "defendant received an unusually long sentence and has served at least 10 years" and a subsequent change in law "would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." USSG § 1B1.13(b)(1)–(6). "[Section] 1B1.13 also provides that a court should reduce a defendant's sentence only after determining that 'the defendant is not a danger to the safety of any other person or to the community.'" *Garcia*, 2024 WL 4966103, at *2.

The factors set forth in 18 U.S.C. § 3553(a) to be considered when considering a motion for compassionate release include, among other things, "the nature and circumstances of the offense;" "the history and characteristics of the defendant;" "the need for the sentence imposed

---

[4] Additionally, "[t]o obtain compassionate release, a defendant must first have 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf' or allowed 'the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility' before bringing his motion." *Van Putten*, 726 F. Supp. 3d at 251 (quoting 18 U.S.C. § 3582(c)(1)(A)). The Government does not argue that Dilone failed to exhaust his administrative remedies, as he did file a request for compassionate release with BOP that was denied. These requirements are therefore satisfied.

6

to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "the kinds of sentences available;" and "the need to avoid unwarranted sentence disparities." *See* 18 U.S.C. § 3582(c)(1)(A) (citing 18 U.S.C. § 3553(a)). It is the defendant's burden to show "extraordinary and compelling circumstances and that a reduction is warranted under [the] § 3553(a) sentencing factors." *Garcia*, 2024 WL 4966103, at *2 (citing *United States v. Jones*, 17 F.4th 371, 375 (2d Cir. 2021)). "[A] district court's discretion in this area—as in all sentencing matters—is broad." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020).

      **B.**    *Discussion*

I first assess whether Dilone has demonstrated "extraordinary and compelling reasons" to reduce his sentence. *See Brooker*, 976 F.3d at 237. Dilone raises several circumstances that he argues constitute extraordinary and compelling reasons: (1) his sentence was "disproportionate" relative to sentences of other 075 co-conspirators; (2) his various activities and behavior in prison demonstrate rehabilitation; (3) the COVID-19 pandemic has made his sentence harsher than it would have been otherwise; and (4) his 17-year old daughter has been hospitalized for conditions relating to "extreme diabetes." (Def. Mem. 7, 14, 16, 20.)

However, Dilone fails to mention—let alone address—his stabbing of Guzman. The Government identifies this failure on the first page of its letter-brief and again on the first page of its sur-reply. (Gov't Mem. 1 ("[T]he defendant does not so much as *mention* the Guzman stabbing"); Sur-Reply 1 ("The defendant still—in approximately 34 pages of briefing—has not said one word about the fact that he admitted to fatally stabbing someone or that the victim's family vehemently opposes his early release." (emphasis omitted)).)[5] Despite the Government's

---

[5] "Sur-Reply" refers to the government's reply to Dilone's reply in support of his motion to reduce his sentence.

7

having flagged the stabbing, and despite my own focus on the stabbing during Dilone's sentencing, (Sentencing Tr. 45:13–47:12 ("Now, you also stabbed Eddie Guzman on March 9th 2016, resulting in his death.")), Dilone did not bother to address this heinous conduct nor how I should consider this conduct in assessing his motion for compassionate release.  This failure is somewhat astounding given that Dilone's lead argument in his motion is that his sentence was disproportionate to that of his co-conspirators even though they all engaged, he claims, in "similar conduct."  (Def. Mem. 7 (citation omitted)).  By itself, Dilone's refusal to acknowledge "the seriousness of [his] offense," 18 U.S.C. § 3553(a), within the context of making his motion for a reduction in sentence is arguably sufficient grounds to deny him the relief he seeks.  *Cf. United States v. Correia*, 19-CR-725, 2021 WL 4993672, at *2 (S.D.N.Y. Oct. 27, 2021) (finding that the "serious[ness]" of defendant's crimes undermined the ability to demonstrate "extraordinary and compelling reasons"); *United States v. Ramos*, 20-CR-29, 2021 WL 3128879, at *2 (S.D.N.Y. July 23, 2021) (same); *United States v. Saccoccia*, No. 91-CR-115, 2020 WL 6153694, at *4 (D.R.I. Oct. 19, 2020) (explaining that a defendant who "overlooks—or refuses to acknowledge—the fact that his actions enabled [a] cartel to continue its activities" fails to demonstrate circumstances warranting a reduction of his sentence), *aff'd*, No. 20-2045, 2021 WL 3660814 (1st Cir. Aug. 18, 2021).  However, I will proceed to analyze each of Dilone's arguments allegedly presenting extraordinary and compelling reasons warranting a sentence reduction.

Dilone is incorrect that his sentence was "disproportionate" to the sentences of "Carlos Mota, Roberto Ramirez, and Rafael Romaro," three of his 075 co-conspirators.  (Def. Mem. 7– 8.)  Although Mota, Ramirez, and Romaro were sufficiently involved in 075 to have known

---

(Doc. 73.)

8

about acts of violence within the scope of the conspiracy (and Romaro once punched and shoved police officers while resisting arrest), none of these men was alleged to have personally committed an action comparable to Dilone fatally stabbing Eddie Guzman in the heart. *Compare* Doc. 41 ("Dilone Sent'g Memo.") at 2 ("Dilone . . . committed voluntary manslaughter in connection with the death of Eddie Guzman."), *with* Sent'g Tr., *United States v. Mota*, 17-CR-123-7 (S.D.N.Y. May 21, 2019), ECF No. 712 at 12:12-15 ("The government does not allege that the defendant personally engaged in the acts of very serious violence that many of his codefendants did."); Sent'g Tr., *United States v. Ramirez*, No. 17-CR-123-30 (S.D.N.Y. Mar. 19, 2018), ECF No. 488 at 17:7-8 (stating that "the defendant did not, as far as the government knows, personally shoot anyone" or otherwise commit an act of violence beyond possessing an inoperable firearm); Presentence Investigation Report, *United States v. Romero*, 17-CR-123-3 (S.D.N.Y. Apr. 9, 2019), ECF No. 679 ¶ 105 (discussing Romero's only violent act while engaged in the conspiracy as resisting arrest, "causing [one] officer to twist his knee," and "striking [another] officer with his fist"). Accordingly, Dilone's disparity argument is misplaced and cannot amount to an extraordinary and compelling circumstance justifying a reduction in his sentence.

Next, while Dilone's use of his time while incarcerated is commendable, (*see* Def. Mem. 14), the law is clear that "rehabilitation alone shall not be considered an extraordinary and compelling reason" for a sentence reduction, *Brooker*, 976 F.3d at 238 (quoting 28 U.S.C. § 994(t)) (alterations adopted and emphasis omitted).

Dilone's argument that the COVID-19 pandemic justifies a reduction of sentence also fails. At this point in time, "[t]he harshness of the pandemic and [any] risk to Defendant's health have now been mitigated to the point that they do not provide extraordinary and compelling

reasons for a sentence reduction." *United States v. Zelaya-Romero*, No. 15-CR-174, 2024 WL 1598209, at *3 (S.D.N.Y. Apr. 12, 2024) (citing, *inter alia*, *United States v. Rojas*, No. 19-CR-467, 2022 WL 14784607, at *3–4 (S.D.N.Y. Oct. 26, 2022)); *accord United States v. De La Cruz*, No. 3:18-CR-45, 2025 WL 685971, at *2 (D. Conn. Mar. 4, 2025) ("While the court is well aware that during the Covid-19 crisis, extraordinary and compelling reasons may have existed to warrant a sentence reduction, that circumstance no longer exists."). Further, having made a "personal decision not to be vaccinated" with the COVID-19 vaccine, (Reply 3), Dilone "cannot then cite to his increased risk of COVID-19 to justify [compassionate] release[]," *United States v. Rivera-Banchs*, 668 F. Supp. 3d 163, 167 (W.D.N.Y. 2023) (citing, *inter alia*, *United States v. Norville*, No. 10-CR-1046, 2021 WL 1731778, at *2 (S.D.N.Y. May 3, 2021)). And Dilone does not claim to have "medical conditions" causing him to be particularly vulnerable to a "risk of contracting the virus" that may have one point warranted closer consideration of this circumstance. *United States v. Castelle*, 18-CR-15, 2021 WL 1199471, at *3 (S.D.N.Y. Mar. 30, 2021) (internal quotation marks omitted).

Dilone's last argument, that his daughter's medical issues provide an extraordinary and compelling reason for a reduction of sentence, also must fail. As an initial matter, the fact that Dilone's daughter suffered from diabetes was raised as an issue at the time of Dilone's sentencing. (PSR ¶ 131; Doc. 41 at 2, 13.) Specifically, I already took "into consideration" Dilone's "involve[ment] in [his] children's lives," including his "taking them to . . . medical appointments," when I sentenced Dilone. (Sentencing Tr. 48:22–23.) As I said to Dilone at his sentencing, "having eight children . . . didn't dissuade you from becoming involved in the RICO conspiracy" or from stabbing someone and risking losing the ability to be with his children. (*Id.* at 48:16–18.) Moreover, "if wanting to be with your children constituted an extraordinary and

10

compelling reason for a reduction of sentence, almost every defendant would qualify." *United States v. Corin*, 10-CR-391-64, 2020 WL 5898703, at *4 (S.D.N.Y. Oct. 5, 2020). Such a circumstance would then not be extraordinary. Dilone has not shown that his daughter's illness is an extraordinary and compelling circumstance relative to the circumstances I considered when I sentenced him.

Moreover, I find it notable that the applicable sentencing guidelines provision states that it is "[t]he death or incapacitation of the caregiver of the defendant's minor child" that constitutes a potentially compelling circumstance, not the incapacitation of the minor child herself. USSG § 1B1.13(b)(3)(A). This makes sense, as it means that a defendant's early release is a matter of his obligation to his minor child and the child's need for a caregiver. Here, although Dilone "accompanied his daughter to doctor appointments," he is not her primary caregiver, as his daughter lives with her mother and appears never to have lived with Dilone. (PSR ¶ 131.) There is no indication that Dilone's daughter's mother is unable to care for her. I also note that Dilone's daughter is no longer a minor, (*see* PSR ¶ 131), which further undermines the notion that Dilone should be released early to care for a minor child. *Cf. United States v. Lowery*, No. 12-CR-298, 2021 WL 1851903, at *3 (D.N.J. May 7, 2021) ("Defendant's 23-year-old son is not a minor child, and Defendant does not allege that any caregiver has died or been incapacitated. Defendant's desire to be present for his son in light of his recent diagnosis is insufficient.").

Even considering all of Dilone's arguments collectively, I find that Dilone has not offered extraordinary or compelling circumstances to warrant a reduction of sentence. Furthermore, even if Dilone had demonstrated extraordinary and compelling circumstances, the factors under 18 U.S.C. § 3553(a) counsel against reducing his sentence. Indeed, particularly given Dilone's

11

repeated failure to acknowledge his fatal stabbing of Guzman, "releasing [him early] would undermine several of the 3553(a) factors," including "the nature and seriousness of the offense." *United States v. Francis*, 17-CR-753-1, 2020 WL 7247180, at *2 (S.D.N.Y. Dec. 9, 2020).  I also find it would undermine "the need for the sentence imposed . . . to reflect the seriousness of the offense" and "the need to avoid unwarranted sentence disparities."  § 3553(a)(2), (6).  Dilone is the only one of his co-conspirators whose conduct resulted in the death of another person, and yet he seeks a reduction in sentence that would place his term of imprisonment in parity with that of his non-violent co-defendants.

Because Dilone has failed to demonstrate extraordinary and compelling circumstances that would warrant the reduction of his sentence and early release, his compassionate-release motion is DENIED.

### III.    Amendment 821 Motion

Dilone also seeks a sentence reduction pursuant to Amendment 821 to the Sentencing Guidelines which went into effect on November 1, 2023 and applies retroactively.  The United States Probation Department issued a report indicating that Dilone is not eligible for a sentence reduction.  (Sealed Doc. 75.)  Specifically, Dilone is ineligible for the "status point reduction" because he did not "receive an enhancement for committing the instant offense while under a criminal justice sentence."  (*Id*. at 2.)  *See* USSG § 4A1.1(e).  And he is ineligible for the "zero-point offender reduction" because he "use[d] violence or credible threats of violence in connection with the offense" and the offense "result[ed] in death." (Doc. 75 at 2–3).  *See* USSG § 4C1.1(a)(3)–(4).  Defendant's Amendment 821 motion is therefore DENIED.

12

### IV. **Conclusion**

For the foregoing reasons, Defendant's motions are DENIED.

The Clerk of Court is respectfully directed to terminate the open motions at Docs. 65 and 74 and to mail a copy of this Opinion & Order to Dilone (Reg. No. 85478-054) at FCI Yazoo City.

SO ORDERED.

Dated: April 17, 2025
      New York, New York

*[signature]*
Vernon S. Broderick
United States District Judge